"Jane DOE", Appellant–Respondent,

v.

DAVIESS COUNTY DIVISION OF
CHILDREN AND FAMILY SER-
VICES, Appellee–Petitioner.

No. 14A01–9511–JV–361.

Court of Appeals of Indiana.

July 29, 1996.

Transfer Denied Oct. 29, 1996.

Joe Black, Vincennes, for Appellant.

Mary Goss, Washington, for Appellee.

## OPINION

ROBERTSON, Judge.

Jane Doe[1] [Mother] appeals the involuntary termination of her parental rights with respect to her son. Mother raises multiple issues arguing that the trial court erroneously permitted the introduction of evidence related to her alcoholism and drug addiction (including medical records and the testimony of health care providers) in violation of 42 CFR part 2. Mother also asserts the Division of Children and Family Services [Division] failed to prove by clear and convincing evidence that it had a satisfactory plan for the child's care and treatment. We restate and consolidate Mother's concerns in two issues, neither of which constitutes reversible error.

## FACTS

The facts in the light most favorable to the trial court's judgment reveal that Mother's child, who is the subject of these proceedings, was born in 1980. Mother has been diagnosed as a chronic, paranoid schizophrenic with borderline intellectual function disorder. She has organic brain syndrome and an organic personality disorder. Mother's brain damage results in frequent and recurring mood swings, explosive anger, severe depression, and suicidal tendencies. Mother is also an alcoholic and drug addict. She has been hospitalized on many occasions over the years for these illnesses.

In 1989, the child was taken into custody by the Division and hospitalized for the treatment of multiple mental, emotional, psychological, and psychiatric concerns. He has been diagnosed with severe depression, adjustment disorder, learning disability, attention deficit hyperactivity disorder, and post-traumatic stress syndrome. The child's natural father's parental rights have been terminated in a separate proceeding.

The child has since been placed in foster care and takes medicines for depression and attention deficit disorder. The foster parents have been attending classes to learn how to cope with the child's special needs. The child is doing much better in foster care.

Mother has been unable or unwilling to avail herself of the many services provided by the Division, including medical and psychiatric care, supervised visits with the child, parenting classes, a family specialist, a homemaker, a semi-independent living program, and additional hospitalizations. Mother failed to complete the programs and has not been cooperative with service providers. Mother has missed appointments with physicians, psychiatrists, psychologists, and social workers, among others. She will not take her psychotropic medications and has continued to abuse alcohol and drugs. At the time of the hearing held in this matter, Mother was again hospitalized. Mother testified that she did not need to be hospitalized. The prognosis for Mother is poor. Several health care providers agreed that all therapeutic programs designed to alter Mother's lifestyle outside the hospital would be futile. Several witnesses testified that Mother could not take care of herself, much less the child.

The Division's plan for the child is long-term foster care. The child is not a candi-

---

1. Fictitious name as per 42 CFR § 2.64(a) (*See* footnote 2 *infra*.).

date for adoption because he is not of an adoptable age (he was fourteen years-old at the time of the termination hearing), has a history of behavior problems, and has special needs.

The trial court terminated Mother's parental rights issuing 31 pages of findings and conclusions. This appeal ensued. Additional facts are supplied as necessary.

## DECISION

■■■ Involuntary termination of parental rights is the most severe action a juvenile court can take. *In re Matter of Robinson,* 538 N.E.2d 1385, 1388 (Ind.1989) (dissenting opinion of J. Dickson and J. DeBruler). Termination severs all rights of a parent to his or her child. *Id.* Therefore, termination is designated to be a last resort, available only when all other reasonable efforts have failed. *Id.* This policy is in recognition of the constitutional rights of parents to the custody of their children and the State's authority to interfere with that right only in certain limited circumstances. *Id.*

■■■ To effect the termination of a parent-child relationship, the State must establish the elements of Ind.Code 31–6–5–4(c) by clear and convincing evidence. *J.K.C. v. Fountain County Department of Public Welfare.,* 470 N.E.2d 88, 91 (Ind.Ct.App.1984). Indiana Code 31–6–5–4(c), the exclusive means to effect the involuntary termination of a parent-child relationship, requires the State to prove that:

(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(2) there is a reasonable probability that:
(A) the conditions that resulted in the child's removal will not be remedied; or
(B) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(3) termination is in the best interests of the child; and

(4) there is a satisfactory plan for the care and treatment of the child.

The trial court should judge a parent's fitness to care for his or her child as of the time of the termination hearing, taking into con-

sideration evidence of changed conditions. *J.K.C.,* 470 N.E.2d at 92. However, recognizing the permanent effect of termination, the trial court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *Id.* The trial court need not wait until the child is irreversibly influenced by his deficient lifestyle such that his physical, mental and social growth is permanently impaired before terminating the parent-child relationship. *Id.* at 93.

■■■ When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Shaw v. Shelby County Department of Public Welfare,* 584 N.E.2d 595, 598 (Ind. Ct.App.1992). We will consider only the evidence and reasonable inferences therefrom which are most favorable to the judgment. *Id.* Where the trial court has entered findings of fact, we engage in a two-tier standard of review. *Id.* First, we determine whether the evidence supports the findings; second, we determine whether the findings support the judgment. *Id.* The trial court's findings and judgment will be set aside only if they are clearly erroneous. *Id.*

### I.

#### 42 CFR Part 2

■■■ Mother asserts that a great deal of evidence, including medical records, exhibits, and the testimony of health care providers, was erroneously introduced into evidence because it was privileged under 42 CFR part 2, which provides for the confidentiality of alcohol and drug abuse patient records. Mother notes that many of the hundreds of pages of medical records admitted into evidence were marked as confidential under 42 CFR part 2. However, the contents of such records may be disclosed whether or not the patient has given his consent:

[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to

the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

42 U.S.C. § 290dd–3(b)(2)(C).[2] In assessing good cause under (b)(2)(C), it is the duty of the court to apply a balancing test which weighs the public interest and the need for disclosure against the possible injury to the patient or program. *Matter of Dwayne G.,* 97 Misc.2d 333, 411 N.Y.S.2d 180, 182 (1978). In child neglect proceedings, the mother's right to the nondisclosure of the records relating to her alcoholism, as well as testimony of her counselor, must give way before the duty of the court to prevent harm and to safeguard the physical, mental and emotional well-being of the child. *Id. See also, Matter of Doe Children,* 93 Misc.2d 479, 402 N.Y.S.2d 958, 959–60 (1978) (good cause for disclosure shown under Federal Drug Abuse Office and Treatment Act of 1972, 21 U.S.C. § 1175(b)(2)(C), which read identically to the statute under scrutiny in the present case, 42 U.S.C. § 290dd–3(b)(2)(C)). Similarly, in *Matter of Baby X,* 97 Mich.App. 111, 293 N.W.2d 736 (1980), the court held that the mother's right to confidentiality as a drug abuse patient, guaranteed under both federal and state law, must give way to the best interests of the child; and therefore, where the mother's drug treatment records are necessary and material to the State's proof of neglect, the State has shown good cause sufficient to permit a court of competent jurisdiction to authorize the disclosure of the mother's drug abuse treatment records. 293 N.W.2d at 741. The *Baby X* court noted that the trial court protected the Mother's interests by conducting the proceedings in private and by carefully restricting the scope of the disclosure. *Id.*

In the present case, the record affirmatively demonstrates that the trial court

2. The procedures and criteria for orders authorizing disclosures for noncriminal purposes are codified at 42 CFR § 2.64 as follows:

(a) *Application.* An order authorizing the disclosure of patient records for purposes other than criminal investigation or prosecution may be applied for by any person having a legally recognized interest in the disclosure which is sought. The application may be filed separately or as part of a pending civil action in which it appears that the patient records are needed to provide evidence. An application must use a fictitious name, such as John Doe, to refer to any patient and may not contain or otherwise disclose any patient identifying information unless the patient is the applicant or has given a written consent (meeting the requirements of these regulations) to disclosure or the court has ordered the record of the proceeding sealed from public scrutiny.

(b) *Notice.* The patient and the person holding the records from whom disclosure is sought must be given:

(1) Adequate notice in a manner which will not disclose patient identifying information to other persons; and

(2) An opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence on the statutory and regulatory criteria for the issuance of the court order.

(c) *Review of evidence: Conduct of hearing.* Any oral argument, review of evidence, or hearing on the application must be held in the judge's chambers or in some manner which ensures that patient identifying information is not disclosed to anyone other than a party to the proceeding, the patient, or the person holding the record, unless the patient requests an open hearing in a manner which meets the written consent requirements of these regulations. The proceeding may include an examination by the judge of the patient records referred to in the application.

(d) *Criteria for entry of order.* An order under this section may be entered only if the court determines that good cause exists. To make this determination the court must find that:

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

(e) *Content of order.* An order authorizing a disclosure must:

(1) Limit disclosure to those parts of the patient's record which are essential to fulfill the objective of the order;

(2) Limit disclosure to those persons whose need for information is the basis for the order; and

(3) Include such other measures as are necessary to limit disclosure for the protection of the patient, the physician-patient relationship and the treatment services; for example, sealing from public scrutiny the record of any proceeding for which disclosure of a patients record has been ordered.

understood, respected, and vigorously defended Mother's rights under 42 CFR part 2. Before trial, the Division petitioned the court for access to Mother's mental health records. Mother objected to disclosure and the trial court held a hearing on the matter. In granting the Division access to the records the trial court found:

> The Court does find good cause shown by the [Division] in that the records are essential to the termination hearing now pending; that there are no other reasonable or effective methods of obtaining the information; the natural mother has failed to produce the records under a separate production request; the need for the information outweighs the privilege and the federal protection given the mother under 42 CFR Part 2; disclosure is in the child's best interest and is necessary to assess the parent's ability to safely and adequately provide for the child; the reason[s] for disclosure outweigh the potential harm.

At the trial held in the hospital, the issue of Mother's confidentiality was again raised. The trial court noted that the proceedings were closed to public scrutiny. In its order terminating Mother's parental rights, the trial court entered the following finding:

> Neither state nor federal law entitles the Mother to maintain the confidentiality of Mother's medical and mental health records and to prevent disclosure of information contained in those record[s] in light of (a) the nature of this cause of action, (b) the defense or defenses asserted, pleaded, and argued by the Mother, (c) the Child's interests as identified by [the Division] and the Child's Guardian Ad Litem, and (d) the Court's obvious need for the information.

Under the present circumstances, we cannot conclude that Mother's rights were violated under 42 U.S.C. § 290dd–3(b)(2)(C), nor did the trial court err in permitting the evidence in question to be admitted into evidence. Mother's protected interests must give way to the best interests of the child. The trial court respected and employed adequate safeguards to protect Mother's confidentiality. Any technical noncompliance with the federal regulations governing the disclosure of these records is harmless. Therefore, we find no error.

## II.

### *Sufficiency*

Mother asserts that the Division's plan of long term foster care for the child is not satisfactory. She argues that the child will have no permanent parent after her parental rights are terminated.

The trial court entered the following finding:

> In the event that the parent-child relationship is terminated, [the Division] has developed, with the assistance of the Child's competent and qualified health-care providers, a long-term plan for the Child that includes (a) continuation of the Child's present plan of care and treatment, which undeniably has improved the Child's physical, mental, emotional, and psychiatric well-being, and (b) a permanent care plan, which includes long-term foster care, designed to meet the Child's ongoing need for permanence and stability.

The evidence sufficiently supports the trial court's conclusion that the Division proved, by clear and convincing evidence, that its plan for the child is satisfactory because he is not of an adoptable age, has a history of behavioral and psychiatric problems, and has special needs. Therefore, we find no error.

Judgment affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurs in result.