## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 24 2019, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT J.D.

Amy D. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent–Child Relationship of Su.S. and S.S.J. (Minor Children)

and

J.D. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

June 24, 2019

Court of Appeals Case No.
19A-JT-177

Appeal from the St. Joseph Probate Court

The Honorable James N. Fox, Judge

The Honorable Graham Polando, Magistrate

Trial Court Cause Nos.
71J01-1804-JT-81
71J01-1804-JT-82

**Bradford, Judge.**

# Case Summary

[1]     J.D. ("Mother") and S.S. ("Father") are the biological parents of Su.S. (born April 20, 2015) and S.S.J. (born May 16, 2016), (collectively "the Children").[1] (Tr. p. 19). In December of 2016, the Children were adjudicated to be children in need of services ("CHINS") due to Mother's substance abuse issues, inadequate housing, and domestic violence between Mother and Father. In May of 2018, the Department of Child Services ("DCS") petitioned for the termination of Mother's parental rights after Mother's and Father's domestically violent relationship persisted. On December 21, 2018, the juvenile court ordered that Mother's parental rights to the Children be terminated. Mother contends that the juvenile court's termination of her parental rights was clearly erroneous. Because we disagree, we affirm.

# Facts and Procedural History

[2]     On December 8, 2016, DCS removed the Children from Mother's care over concerns of substance abuse, homelessness, and domestic violence between Mother and Father. Parents had tested positive for cocaine. In January of 2017, the juvenile court found the Children to be CHINS and continued their

---

[1] Father does not appeal the termination of his parental rights.

removal. The juvenile court ordered Mother to maintain contact with DCS, maintain suitable and safe housing, secure a legal and stable source of income, refrain from substance abuse, submit to random drug screens, complete a substance-abuse assessment, meet all personal and mental-health needs, refrain from domestic violence, attend visitation with the Children, complete a psychological-parenting assessment, and complete home-based case work. Mother completed the substance-abuse and psychological-parenting assessments, completed random drugs screens, and maintained sobriety. In April of 2017, Mother's visitation was suspended after only attending two visits with the Children.

[3]    At some point in 2017, Mother moved to Racine, Wisconsin, in order to remove herself from her violent relationship with Father. Mother, however, eventually helped Father move to Racine and in November of 2017, gave birth to Su.St., Mother's and Father's third child. In March of 2018, police executed a search warrant at the residence where Mother, Father, and Su.St. were residing with Mother's great aunt, Mother's aunt, and Mother's aunt's boyfriend. Mother's aunt's boyfriend had multiple warrants issued for his arrest. At the residence, police discovered a digital scale and plastic baggies. Father was also arrested for possession of marijuana. As a result, an order mandating no contact between Mother and Father was issued.

[4]    In May of 2018, DCS petitioned for the termination of Mother's parental rights. The On-Going Family Case Manager in Racine Stephanie Parris testified that in May of 2018, Su.St. was removed from Mother's care and placed into foster

care after Mother left Su.St. alone in a playpen in her bedroom while Mother fled from police after allegedly slashing Father's new girlfriend's automobile tires. On August 1, 2018, Mother and Father co-signed a lease for an apartment in Wisconsin and began living together in said apartment. On August 30, 2018, Mother's aunt and neighbor both contacted police to report an incident of domestic violence between Mother and Father. Father had allegedly barricaded Mother in their apartment and had beaten her. The juvenile court held a series of evidentiary hearings on the termination petition on September 14, October 22, and October 26, 2018. On September 15, 2018, Mother reported to police that Father had assaulted her. After accusing Mother of cheating on him, Father had barricaded the door, punched Mother multiple times, and strangled her until she lost consciousness. At the time, Mother was pregnant with her and Father's fourth child. On October 5, 2018, Mother removed Father from the apartment lease. On December 21, 2018, the juvenile court ordered that Mother's parental rights be terminated.

# Discussion and Decision

[5] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The parent–child relationship is "one of the most valued relationships in our culture." *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 286 (Ind. 2003) (internal citations omitted). Parental rights, however, are not absolute

and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities their rights may be terminated. *Id.*

[6] In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied*. We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings, second, whether the factual findings support the judgment. *Id.* The juvenile court's findings and judgment will only be set aside if found to be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the judgment." *Id.*

[7] Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence

    (B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> [and]

> (C) that termination is in the best interests of the child[.]

Ind. Code § 31-35-2-4(b)(2).[2] In challenging the sufficiency of the evidence to sustain the termination of her parental rights, Mother contends that the trial court erred by concluding that (1) the conditions that resulted in the removal of the Children from her care would not be remedied and (2) termination of her parental rights was in the Children's best interests.

# I. Indiana Code Section 31-35-2-4(b)(2)(B)

[8] Mother argues that there is insufficient evidence to establish a reasonable probability that the conditions that resulted in the Children's removal would not be remedied. Mother does not challenge the juvenile court's conclusion that a reasonable probability existed that the continuation of the parent–child relationship posed a threat to the well-being of the Children. Because Indiana

---

[2] It is not disputed that the Children had been removed from Mother for at least six months under a dispositional decree and that there was a satisfactory plan for the care and treatment of the Children, both required findings pursuant to Indiana Code section 31-35-2-4(b)(2).

Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court's unchallenged conclusion would be sufficient to satisfy said section. That said, we choose to address Mother's argument on the merits.

[9] In determining whether the conditions that resulted in the child[ren]'s removal…will not be remedied, we engage in a two-step analysis[.] First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions—balancing a parent's recent improvements against habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642–43 (Ind. 2014) (internal citations, quotations, and footnote omitted, first and third set of brackets in original, second set added).

[10] The conditions that led to the Children's removal were Mother's substance abuse issues, housing issues, and domestic violence between Mother and Father. While we commend Mother for maintaining sobriety and attaining employment, we conclude that DCS has produced ample evidence to establish a reasonable probability that all of the conditions that led to removal would not be remedied. Throughout this entire matter, Mother has continued to maintain a relationship with Father despite his well-established propensity for violence.

Mother moved to Wisconsin to allegedly avoid Father and better herself but eventually helped Father to relocate to be with her. Despite a no-contact order issued in Wisconsin, which Mother at one time discussed possibly attending a class to have lifted, Mother cosigned a lease with Father and continued living with him in an apartment even while the evidentiary hearings regarding termination of her parental rights were ongoing. Most troubling, Mother kept Father's name on their apartment lease for nearly a month after he beat and strangled her to the point of unconsciousness, all while she was pregnant with their fourth child. Moreover, Mother chose not to report incidents of domestic violence to either the police or her caseworkers and continuously lied to her caseworkers about whether she and Father were living together. Mother testified that she and Father have been in an on-and-off-again relationship for seven years and have broken up "so many [times] I couldn't even count or tell you." Tr. Vol. II p. 116. Given the consistent pattern of domestic violence between Father and Mother, in addition to Mother's testimony, the juvenile court was justified in concluding that Mother would not remedy this issue. The juvenile court did not abuse its discretion by concluding that the conditions that led to the Children's removal would not be remedied.

## II. Indiana Code Section 31-35-2-4(b)(2)(C)

[11]   Mother argues that there is insufficient evidence to support the juvenile court's conclusion that termination of her parental rights was in the Children's best interests. We are mindful that, in determining what is in the best interests of a child, the juvenile court must look beyond factors identified by DCS and

consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until a child is irreversibly harmed before terminating the parent–child relationship because it must subordinate the interests of the parents to those of the children. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). We have previously held that recommendations from the family case manager ("FCM") and court-appointed special advocate ("CASA") to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, is sufficient evidence to show that termination is in the child's best interests. *In re J.S.*, 906 N.E.2d at 236.

[12]     FCM Morgan Anthony and CASAs Reagan Minear and Rachel Korody all testified that termination of Mother's parental rights was in the Children's best interests. While coupling that testimony with our previous conclusion that there was sufficient evidence to show that the conditions of removal would not be remedied is sufficient to support the juvenile court's termination of Mother's parental rights, it is not as though this testimony is unsupported by other evidence in the record.

[13]     Dr. Alan Wax, a psychologist who conducted Mother's psychological parenting assessment, did not recommend reunification, finding that Mother did not seem to understand the seriousness and gravity of the case. Dr. Wax found that reunification could lead to attachment trauma causing irreparable harm to the Children. His testimony is bolstered by the fact that Mother only attended two visits with the Children after their removal, missing all the others until visitation was suspended. Mother's failure to attend scheduled visits caused one of the

Children to display negative behaviors upon returning to foster care. Moreover, the May 2018 incident that led to the removal of Mother's third child from her care demonstrates that Mother consistently chooses her turbulent relationship with Father at the expense of her own children. Mother has not established that the juvenile court's determination that termination was in the Children's best interests was clearly erroneous.

[14] The judgment of the juvenile court is affirmed.

Crone, J., and Tavitas, J., concur.