## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 20 2019, 6:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT M.B.

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent–Child Relationship of A.B. (Minor Child)

and

M.B. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

August 20, 2019

Court of Appeals Case No. 19A-JT-571

Appeal from the Vigo Circuit Court

The Honorable Sarah K. Mullican, Judge

Trial Court Cause No. 84C01-1805-JT-625

**Bradford, Judge.**

# Case Summary

[1] M.B. ("Father") is the biological father of A.B. ("Child"). In August of 2017, Child was placed with Father on a trial home visit. In September of 2017, Child was adjudicated to be a child in need of services ("CHINS") after Father admitted that she was a CHINS and agreed to participate in services. The Department of Child Services ("DCS") petitioned for the termination of Father's parental rights after Father was arrested on federal drug-related charges in October of 2017. In January of 2019, the juvenile court ordered that Father's parental rights to Child be terminated. Father contends, *inter alia*, that the juvenile court's termination of his parental rights was clearly erroneous. Because we agree, we reverse and remand for further proceedings.

# Facts and Procedural History

[2] Father and Mother[1] are the biological parents of Child, born February 21, 2016. On March 9, 2017, Mother became upset with Father and rammed her vehicle into his while Child was seated inside of Mother's vehicle. DCS took custody of Child after Mother was arrested, and Father admitted to smoking marijuana the day before and refused to take a drug test. On March 10, 2017, DCS filed a

---

[1] Mother does not participate in this appeal.

petition alleging that Child was a CHINS. On August 17, 2017, Father admitted that Child was a CHINS and agreed to participate in services. On September 7, 2017, the juvenile court adjudicated Child a CHINS.

[3]     Father successfully completed home-based case management, maintained a working mobile telephone to communicate with DCS, consistently participated in visitation with Child, allowed the family case manager ("FCM") to conduct home visits, completed a substance-abuse assessment which did not recommend any drug treatment, and established a home in his own apartment, even though he eventually had to move back into his grandmother's house. Obtaining a part-time job was the only goal Father did not successfully achieve, despite applying for various jobs. By mid-August of 2017, DCS placed Child with Father on a trial home visit. On October 12, 2017, the trial home visit ended after Father was arrested on federal charges for distributing illegal drugs. FCM William Welch testified that visitation between Father and Child was suspended following his incarceration because visitation while a parent is incarcerated is not something that DCS typically permits. FCM Welch also testified that despite being unable to visit Child, Father emailed FCM Welch a few times regarding possible placements for Child and sent him a letter regarding things "in general," to which FCM Welch responded to by sending photos of Child and information regarding her well-being. Tr. pp. 55–56.

[4]     On June 13, 2018, DCS petitioned for the termination of both Mother's and Father's parental rights. On December 17, 2018, the juvenile court conducted a termination hearing. At the termination hearing, Father appeared

telephonically due to his pre-trial incarceration on the pending federal distributing charges. The amount of time Father was to remain incarcerated was subject to speculation by both parties. DCS believed that Father would be incarcerated for several more years, while Father contended that "They ain't said nothing yet. They keep postponing me.[2] They said I was going to be here a year or two years at the most or even a year if I get a plea bargain." Tr. pp. 72–73. Father's criminal history, all of which occurred prior to this current matter, was established and included a 2006 conviction for methamphetamine dealing, a 2012 conviction for marijuana possession, a 2014 conviction for marijuana dealing, and a 2016 conviction for maintaining a common nuisance.

[5] FCM Welch testified and court-appointed special advocate Mackenzie Kelley ("CASA Kelley") submitted a report regarding Child's well-being in her foster placement but stopped short of testifying as to what was in Child's best interests. CASA Kelley noted that Child was happy and doing well in her foster placement and called her foster parents "mom" and "dad," which lead to CASA Kelley recommending that Child remain in foster placement and efforts be made to establish a permanent home. Appellant's App. Vol. II p. 15. FCM Welch testified that Child was doing very well, was integrated into her foster placement, and likened the other children living in her foster placement to siblings. FCM Welch also testified that his concern was that both of Child's parents were incarcerated. On January 4, 2019, the juvenile court terminated

---

[2] Father testified that his trial date had been postponed four times.

both Father's and Mother's parental rights in Child. Regarding Father, the juvenile court stated in its order only that

> When Father began screening clear for the Department after May, 2017, [Child] was ultimately placed with him on a trial home visit, beginning August 28, 2017. Although Father otherwise seemed to do well with [Child], the trial home visit ended on October 10, 2017, when Father was arrested for dealing drugs by federal authorities. From that date to the present he has been held pretrial and does not have a trial date. DCS believes he will be incarcerated for several more years.

Appellant's App. Vol. II p. 25.

# Discussion and Decision

[6] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The parent–child relationship is "one of the most valued relationships in our culture." *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 286 (Ind. 2003) (internal citations omitted). Parental rights, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities their rights may be terminated. *Id.*

[7] In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied*. We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings, second, whether the factual findings support the judgment. *Id.* The juvenile court's findings and judgment will only be set aside if found to be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the judgment." *Id.*

[8] Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence "that termination is in the best interests of the child[.]" Ind. Code § 31-35-2-4(b)(2). In challenging the sufficiency of the evidence to sustain the termination of his parental rights, Father contends that the juvenile court erred by concluding, *inter alia*, that termination of his parental rights was in Child's best interests.

[9] We are mindful that, in determining what is in the best interests of the child, the juvenile court must look beyond factors identified by DCS and consider the

totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until a child is irreversibly harmed before terminating the parent–child relationship because it must subordinate the interests of the parents to those of the children. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[10] Here, it seems that the termination of Father's parental rights was based solely on his pre-trial incarceration and the assumption that it might last several more years. Father, however, has not been convicted, and it is, of course, not certain that he will be. Given Father's presumption of innocence and speculation as to the length of his incarceration, this is insufficient to support termination. While a conviction or definite sentence might support a decision to terminate parental rights, the record before the juvenile court in this case did not provide such evidence.

[11] The State contends that Father's criminal history and Child's success in her current foster placement also support the juvenile court's best interests determination. The juvenile court's termination order, however, never mentions Father's criminal history as a contributing factor to its decision. Consequently, we shall assume it was not. Moreover, while FCM Welch and CASA Kelley testified that Child is doing well and integrated into her foster placement, that does not necessarily mean Father's parental rights should be terminated. *See In re V.A.*, 51 N.E.3d 1140, 1152 (Ind. 2016) ("[T]ermination is intended as a last resort, available only when all reasonable efforts have failed."). It is our sincerest hope that all children who must be placed in a foster home thrive in

their placement, but the fact that it might be a better home does not warrant the termination of biological parent's rights. *See id.* at 1151 (noting that a parent's rights may not be terminated solely because there is a better home available for the child). A review of the record in this case indicates that the juvenile court based its decision solely on the fact that Father was being held in pre-trial incarceration with, at best, a purely speculative length of incarceration. Under this particular set of circumstances, we cannot say that DCS produced sufficient evidence to support the juvenile court's determination that termination of Father's parental rights was in Child's best interests.

[12] The judgment of the juvenile court is reversed and remanded for further proceedings.

Vaidik, C.J., and Riley, J., concur.