## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 14 2019, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT J.W.

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent–Child Relationship of C.W. and J.C. (Minor Children) <br><br> and <br><br> J.W. (Father), <br><br> *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, <br><br> *Appellee-Petitioner.* | November 14, 2019 <br><br> Court of Appeals Case No. 19A-JT-1140 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable G. George Pancol, Judge <br><br> Trial Court Cause Nos. 48C02-1810-JT-171 48C02-1810-JT-172 |

**Bradford, Judge.**

# Case Summary

[1] J.W. ("Father") and S.C. ("Mother"),[1] (collectively "Parents"), are the biological parents of J.C. (born July 28, 2004) and C.W. (born November 16, 2010), (collectively "the Children"). In January of 2017, the Children were adjudicated to be children in need of services ("CHINS") after Parents admitted to such due to substance abuse issues. In October of 2018, the Department of Child Services ("DCS") petitioned for the termination of Parents' parental rights. On April 22, 2019, the juvenile court ordered that Parents' rights to the Children be terminated. Father contends that the juvenile court's termination of his parental rights was clearly erroneous. We affirm.

# Facts and Procedural History

[2] On October 21, 2016, DCS removed the Children from Mother's home due to concerns over substance abuse. DCS was unable to locate Father at the time of

---

[1] Mother does not appeal the termination of her parental rights.

removal. On October 25, 2016, DCS petitioned for the Children to be adjudicated CHINS. On January 10, 2017, Parents appeared before the juvenile court and admitted that the Children were CHINS due to substance abuse. On February 15, 2017, the juvenile court held a dispositional hearing on the CHINS petition and ordered Father to, *inter alia*, maintain weekly contact with DCS; notify DCS of any changes in address, household composition, employment, telephone number, or any criminal charges within five days; enroll in any programs recommended by the family case manager ("FCM"); refrain from any use or possession of illegal drugs; complete a substance-abuse assessment and follow all recommendations; submit to random drug screens; participate in home-based counseling and individual and family therapy; and attend scheduled visitation with the Children. That same month, Father was arrested and charged with Level 6 felony methamphetamine possession.

[3]     On October 4, 2017, the juvenile court held a review hearing and found that Father's visitation services were closed out for inconsistent attendance, and after being reinstated, were again suspended upon the advice of the Children's therapist after J.C. refused to attend. Father's home-based casework was also closed out for noncompliance. On May 30, 2018, the juvenile court conducted a modification hearing and found that Father had "consistently failed to comply with services with the only active service being individual therapy for [Father], a service focused on his substance issues, and not on the children." Appellant's App. Vol. II p. 20. As a result, the juvenile court added a concurrent permanency plan of adoption. On October 17, 2018, DCS petitioned for the

termination of Parents' parental rights. The juvenile court held evidentiary hearings on October 17, November 21, and December 4, 2018, and January 22 and February 19, 2019.

[4] At an evidentiary hearing, J.C. testified that she could not remember the last time she had seen her Father and asked the juvenile court to "[g]et [her] as close to adoption as they can." Tr. p. 34. Court-appointed special advocate ("CASA") Traci Barber later testified that as a result of having had to testify in this matter, J.C. "felt suicidal" and had to have her therapy increased. Tr. p. 86. CASA Barber also testified that she believed there was no reasonable probability that the reasons that resulted in the Children's removal would be remedied and that the Parents' parental rights should be terminated.

[5] FCM Rob Belt testified that he did not believe there was a reasonable probability that the conditions that lead to the Children's removal would be remedied and that adoption of the Children was in their best interests. FCM Belt cited Father's continued drug use throughout this matter, which consisted of positive drug screens for methamphetamine, amphetamine, cocaine, and THC. FCM Belt testified that Father had failed to maintain weekly contact with DCS or participate in family counseling and only started participating in individual counseling toward the end of this case. On April 22, 2019, the juvenile court ordered that Father's parental rights in the Children be terminated.

# Discussion and Decision

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). "Though it's been oft-stated, it bears repeating: the parent–child relationship is one of the most valued relationships in our culture." *Matter of M.I.*, 127 N.E.3d 1168, 1170–71 (Ind. 2019) (internal quotations and citations omitted). Parental rights, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities their rights may be terminated. *Id.*

In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied*. We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings, second, whether the factual findings support the judgment. *Id.* The juvenile court's findings and judgment will only be set aside if found to be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the

juvenile court's conclusions or the conclusions do not support the judgment."
*Id.*

Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services[.]
>
> [and]
>
> (C) that termination is in the best interests of the child[.]

Ind. Code § 31-35-2-4(b)(2).[2] In challenging the sufficiency of the evidence to sustain the termination of his parental rights, Father contends that the juvenile court erred by concluding that (1) there is a reasonable probability that the

---

[2] It is not disputed that the Children had been removed from Father for at least six months under a dispositional decree and that there was a satisfactory plan for the care and treatment of the Children, both required findings pursuant to Indiana Code section 31-35-2-4(b)(2).

conditions that resulted in the Children's removal would not be remedied and

(2) termination of his parental rights was in the Children's best interests.[3]

# I. Indiana Code Section 31-35-2-4(b)(2)(B)

Father contends that there is insufficient evidence to establish a reasonable probability that the conditions that resulted in the Children's removal would not be remedied.

> In determining whether the conditions that resulted in the child[ren]'s removal…will not be remedied, we engage in a two-step analysis[.] First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions—balancing a parent's recent improvements against habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

---

[3] Father also seemingly contends that the juvenile court erroneously concluded that the continuation of the parent–child relationship poses a threat to the well-being of the child. However, because the juvenile court never reached this conclusion, we will not address this claim.

*In re E.M.*, 4 N.E.3d 636, 642–43 (Ind. 2014) (internal citations, quotations, and footnote omitted, first and third set of brackets in original, second set added).

[11] The condition that led to the Children's removal was substance abuse. We conclude that DCS has produced ample evidence to establish a reasonable probability that this condition would not be remedied. First, Father was arrested and charged with Level 6 felony methamphetamine possession. Father has also screened positive for illegal drugs twelve times. Father has tested positive for opiates, cocaine, methamphetamine, amphetamines, and THC. Moreover, Father has failed to maintain sobriety throughout this matter or complete ordered services. Although Father completed his substance-abuse assessment, he failed to attend in-patient treatment as recommended. CASA Barber testified that "Father has been unable to consistently stay clean throughout the case" and has been unable to finish services. Tr. p. 86. While it is true that Father completed an out-patient program in November of 2018 shortly before the termination proceedings began, the juvenile court was entitled to conclude that this was outweighed by Father's history of drug use throughout this matter and did so. *See K.T.K. v. Ind. Dept. of Child Servs., Dearborn Cty. Office*, 989 N.E.2d 1225, 1234 (Ind. 2013) (concluding that the trial court was within its discretion to disregard Mother's efforts that were made only shortly before termination and to weigh more heavily Mother's history of conduct prior to said efforts). The juvenile court did not abuse its discretion by concluding that the conditions that led to the Children's removal would not be remedied.

# II. Indiana Code Section 31-35-2-4(b)(2)(C)

[12] Father contends that there is insufficient evidence to support the juvenile court's conclusion that termination of his parental rights was in the Children's best interests. We are mindful that, in determining what is in the best interests of a child, the juvenile court must look beyond factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until a child is irreversibly harmed before terminating the parent–child relationship because it must subordinate the interests of the parents to those of the children. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). We have previously held that recommendations from the FCM and CASA to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, is sufficient evidence to show that termination is in the child's best interests. *In re J.S.*, 906 N.E.2d at 236.

[13] CASA Barber testified that termination of Father's parental rights and adoption was in the Children's best interests. FCM Belt also testified that adoption was in the Children's best interests. While coupling that testimony with our previous conclusion that there was sufficient evidence to show that the conditions of removal would not be remedied is sufficient to support the juvenile court's termination of Father's parental rights, it is not as though this testimony is unsupported by other evidence in the record.

[14] In addition to his inability to maintain sobriety, Father admitted that in over two years since this matter began, he has not completed a single service that

was ordered by the juvenile court. Moreover, visitation was closed out because of Father's failure to attend, and once reopened, it was ceased due the recommendation of the Children's therapist after J.C. refused to attend. Last, Father's relationship with the Children appears to be harmful to their well-being. J.C. requested that the juvenile court "[g]et [her] as close to adoption as they can." Tr. p. 34. Following that testimony, CASA Barber explained that J.C.'s therapy had to be intensified because she felt suicidal. The Children's foster parent Amy Wolfe also testified that following J.C.'s testimony, she was "extremely emotionally fragile," and "[they] had to up a lot of her services." Tr. p. 82. Wolfe testified, however, that since being placed in her home the Children are "flourishing." *Id.* J.C. is a member of the high school dance team and has made several friends. C.W. is in gymnastics, girl scouts, and making tremendous strides academically. Considering the totality of the evidence, Father has failed to establish that the juvenile court's determination that termination was in the Children's best interest was clearly erroneous.

[15] The judgment of the juvenile court is affirmed.

Vaidik, C.J., and Riley, J., concur.