## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 18 2020, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent–Child Relationship of J.R. and A.T. (Minor Children) | May 18, 2020 |
| and | Court of Appeals Case No. 19A-JT-2675 |
| C.T. (Mother), | Appeal from the Marion Superior Court |
| *Appellant-Respondent,* | The Honorable Mark A. Jones, Judge |
| v. | The Honorable Peter Haughan, Magistrate |
| The Indiana Department of Child Services, | Trial Court Cause Nos. 49D15-1904-JT-410 49D15-1904-JT-411 |
| *Appellee-Petitioner.* | |

**Bradford, Chief Judge.**

# Case Summary

C.T. ("Mother") is the biological parent of J.R. (born June 20, 2015) and A.T. (born October 15, 2017), (collectively the "Children").[1] In September of 2018, the Children were adjudicated to be children in need of services ("CHINS") due to Mother's substance abuse and a lack of safe and stable housing.[2] In April of 2019, the Department of Child Services ("DCS") petitioned for the termination of Mother's parental rights to the Children. On October 22, 2019, the juvenile court ordered that Mother's parental rights to the Children be terminated. Mother contends that the juvenile court's termination of her parental rights was clearly erroneous. We affirm.

# Facts and Procedural History

In 2017, DCS became involved with Mother and the Children after receiving multiple reports regarding abuse and neglect, including that A.T. tested positive for marijuana at birth. In December of 2017, DCS petitioned to have the Children adjudicated CHINS due to, *inter alia*, Mother's substance abuse and her inability to provide suitable and stable housing. On June 15, 2018, the

---

[1] Father does not participate in this appeal.

[2] The Children were also adjudicated CHINS due to domestic violence between Mother and Father; however, the juvenile court concluded in its order terminating Mother's parental rights that Mother had remedied the domestic violence issue.

juvenile court held a factfinding hearing on the CHINS petition, at which DCS reported that Mother had tested positive for amphetamines that same day and was not engaged in services.[3] In September of 2018, following Mother's admissions, the juvenile court adjudicated the Children to be CHINS. In October of 2018, the juvenile court held a dispositional hearing, at which the juvenile court removed the Children from Mother's care and ordered Mother to engage in home-based therapy and follow all recommendations, engage in home-based case management and follow all recommendations, submit to random drug/alcohol screens and that any failure to complete a requested drug screen would be considered a positive result, and follow all recommendations from her previously-completed substance-abuse assessment.

[3] At a November 30, 2018, permanency hearing, DCS reported that Mother had not engaged in any services. On March 22, 2019, the juvenile court held a permanency hearing, at which it ordered the permanency plan to be changed from reunification to adoption. In doing so, the court found that DCS had offered services to achieve reunification, but Mother had not followed the recommendations from her substance-abuse assessment and had not participated in home-based case therapy or management. In March of 2019,

---

[3] Mother has a total of six children from multiple fathers; however, this appeal only involves J.R. and A.T., both having the same Father. The June 15, 2018, factfinding hearing was continued after one of the fathers' counsel requested a continuance.

Mother spent three weeks at Bridges of Hope, which is an inpatient drug-treatment facility.

[4] On April 3, 2019, DCS petitioned for the termination of Mother's parental rights to the Children. On June 28, 2019, the juvenile court held a periodic review hearing, at which it was reported that Mother was not participating in random drugs screens and had screened positive for alcohol, methamphetamine, and amphetamine on June 17, 2019. As a result, the juvenile court suspended Mother's visitation until she completed inpatient treatment. In August of 2019, Mother relapsed, using methamphetamine. That same month, Mother entered Volunteers of America ("VOA"), which is an inpatient treatment program. After approximately sixteen days, Mother voluntarily left VOA against the staff's recommendations that Mother complete twenty-one days at VOA and then be reassessed, which ultimately resulted in Mother being unsuccessfully discharged. On September 9 and 12, 2019, the juvenile court held a factfinding hearing regarding DCS's termination petitions.

[5] At the factfinding hearing, Mother's cousin Amanda Bays testified that Mother had smoked marijuana her entire adult life and that Mother had told her in October of 2018 that she had been using methamphetamine for two years but was not addicted and could quit anytime. Shanon Simms is a home-based case worker who had begun working with Mother to address her substance abuse issues after she left Bridges of Hope in March of 2019. Simms testified, explaining that the treatment program he enrolled Mother in required her to complete a substance-use and brain-injury workbook, which she had been

unsuccessful in doing. He also testified that Mother's drug of choice was methamphetamine, she used marijuana regularly, and she had relapsed on methamphetamine twice. Simms noted that Mother had explained to him that she self-medicates with marijuana to deal with stress and relax. Simms concluded that Mother "has a general knowledge of what substance use disorder is, why she's in the predicament that she's in, but [does not] think that she knows how to put the thing in place to obtain her sobriety or- or to maintain it." Tr. Vol. II p. 101.

[6] Mother's therapist at VOA, Thomas Pennington testified that while Mother had admitted to using methamphetamine and marijuana, she did not think she "was addicted to marijuana at all, and did not seem to think that the meth was a problem. She seemed to think she could stop using it." Tr. Vol. II p. 37. On October 22, 2019, the juvenile court ordered that Mother's parental rights to the Children be terminated.

# Discussion and Decision

[7] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). "Though it's been oft-stated, it bears repeating: the parent–child relationship is one of the most valued relationships in our culture." *Matter of M.I.*, 127 N.E.3d 1168, 1170–71 (Ind. 2019) (internal quotations and citations omitted). Parental rights, however, are not absolute and must be subordinated to the child's interests

when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities, their rights may be terminated. *Id.*

[8]   In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied*. We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings, second, whether the factual findings support the judgment. *Id.* The juvenile court's findings and judgment will only be set aside if found to be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the judgment." *Id.* When the juvenile court's findings are unchallenged on appeal, we accept them as true. *See In re S.S.*, 120 N.E.3d 605, 610 (Ind. Ct. App. 2019).[4]

---

[4] Mother seems to argue that the juvenile court erred in finding that she was unemployed; however, Simms testified that at the time of the evidentiary hearing he believed Mother to be unemployed, testimony which that juvenile court was entitled to believe. We will not second-guess the juvenile court's conclusion in this regard.

Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services[.]
>
>> [and]
>
> (C) that termination is in the best interests of the child[.]

Ind. Code § 31-35-2-4(b)(2).[5] In challenging the sufficiency of the evidence to sustain the termination of her parental rights, Mother contends that the juvenile court erred by concluding that (1) there is a reasonable probability that the conditions that resulted in the Children's removal would not be remedied, (2) the continuation of the parent–child relationship posed a threat to the

---

[5] It is not disputed that the Children had been removed from Mother for at least six months under a dispositional decree and that there was a satisfactory plan for the care and treatment of the Children, both required findings pursuant to Indiana Code section 31-35-2-4(b)(2).

Children's well-being, and (3) termination of her parental rights was in the Children's best interests.

# I. Indiana Code Section 31-35-2-4(b)(2)(B)

[10] Mother contends that there is insufficient evidence to establish a reasonable probability that the conditions that resulted in the Children's removal would not be remedied or that the continued parent–child relationship posed a threat to the Children. Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS was only required to establish one of the circumstances. We choose to first address Mother's contention that the juvenile court erred by concluding that the conditions which resulted in the Children's removal would not be remedied.

> In determining whether the conditions that resulted in the child[ren]'s removal…will not be remedied, we engage in a two-step analysis[.] First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions—balancing a parent's recent improvements against habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642–43 (Ind. 2014) (cleaned up).

[11] The conditions that led to the Children's removal were Mother's substance abuse and her inability to maintain safe and suitable housing. DCS produced ample evidence to establish a reasonable probability that these conditions would not be remedied. Throughout this matter, Mother has failed to maintain sobriety. Mother tested positive for methamphetamine and amphetamine in June of 2019 and admitted to using methamphetamine in August of 2019, less than a month prior to the evidentiary hearings regarding DCS's termination petition. Mother has, at best, submitted to drug screens sporadically and failed to successfully complete any of the court-ordered services. Moreover, Mother has admitted to multiple persons that she does not believe she is addicted to methamphetamine or marijuana and uses marijuana to self-medicate. Mother also voluntarily left VOA against the staff's recommendations, at which she was receiving inpatient treatment for her substance abuse.

[12] As to Mother's inability to maintain safe and suitable housing, her living situation has been unstable throughout this matter. In the initial stages of this matter, DCS and the family case manager ("FCM") did not see where Mother was living. FCM Kareem Fenner stated that Mother told her she was staying with various friends. Mother also spent stints living with her mother and then with her sister. At some point, Simms was aware that Mother was living with her boyfriend, who had outstanding warrants issued for his arrest. At the time of the factfinding hearings, Mother testified that she was living in an apartment; however, the juvenile court concluded that "Mother's testimony was not

credible or believable," Appellant's App. Vol. II p. 31, and we will not second-guess its determination. Given Mother's consistent drug use and inability to maintain safe and stable housing, the juvenile court did not clearly err by concluding that the conditions that led to the Children's removal would not be remedied. Therefore, it is unnecessary for us to address Mother's contention that there was insufficient evidence to conclude that the continued parent–child relationship posed a threat to the Children.[6]

# II. Indiana Code Section 31-35-2-4(b)(2)(C)

[13] Mother contends that there is insufficient evidence to support the juvenile court's conclusion that termination of her parental rights was in the Children's best interests. We are mindful that, in determining what is in the best interests of the children, the juvenile court must look beyond factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until the children are irreversibly harmed before terminating the parent–child relationship because it must subordinate the interests of the parents to those of the children. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). We have previously held that recommendations from the FCM and

---

[6] Mother also seemingly argues that her substance abuse is a result of her untreated mental-health issues, for which DCS failed to provide services. Mother's argument is merely an invitation for us to reweigh the evidence, which we will not do. *Doe*, 669 N.E.2d at 194. Moreover, Mother's own testimony undercuts her argument, during which she stated that the only time she had received medication for her mental health issues was while she was in inpatient treatment at Bridges of Hope and VOA, and Mother voluntarily left VOA against the staff's recommendations.

court-appointed special advocate ("CASA") to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, is sufficient evidence to show that termination is in the children's best interests. *In re J.S.*, 906 N.E.2d at 236.

[14] Guardian *ad-Litem* Jessica Adams, FCM Brittany Dale, and CASA Shawna Eikenberry all testified that adoption was in the Children's best interests. When considered with our previous conclusion that there was sufficient evidence to show that the conditions of removal would not be remedied is sufficient to support the juvenile court's termination of Mother's parental rights, it is not as though this testimony is unsupported by other evidence in the record.

[15] Mother has consistently failed to address her substance-abuse issues throughout this matter, and our review of the record does not persuade us that she is serious about addressing them in the near future. Mother has also failed to maintain safe and suitable housing or to successfully completed any of the court-ordered services. Moreover, the juvenile court concluded that the Children are doing well in their current placement and that this placement will provide the Children with "a permanent, safe and stable home, and [will] provide for the Children's long-term and short-term needs." Appellant's App. Vol. II p. 34. Considering the totality of the evidence, Mother has failed to establish that the juvenile court's determination that termination was in the Children's best interests was clearly erroneous.

[16] The judgment of the juvenile court is affirmed.

Baker, J., and Pyle, J., concur.