## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 07 2019, 8:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Benjamin J. Church
Church Law Office
Monticello, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew Michaloski
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent–Child Relationship of J.L. (Minor Child)

and

C.H. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 7, 2019

Court of Appeals Case No.
18A-JT-1918

Appeal from the White Circuit Court

The Honorable Robert W. Thacker, Judge

Trial Court Cause No.
91C01-1712-JT-29

**Bradford, Judge.**

# Case Summary

[1]     C.H. ("Mother") is the biological parent of J.L. ("Child").[1] In 2016, at approximately four months old, Child was placed in the care of his great aunt and adjudicated to be a child in need of services ("CHINS") due to Mother's continuous drug use. In December of 2017, the Department of Child Services ("DCS") petitioned for the termination of Mother's parental rights, after she failed, *inter alia*, to refrain from using controlled substances.  On July 20, 2018, the juvenile court ordered that Mother's parental rights in Child be terminated. Mother contends that the evidence was insufficient to sustain the termination of her parental rights. Because we disagree, we affirm.

# Facts and Procedural History

[2]     Mother is the biological parent of Child (born April 21, 2016). After admittance into the hospital for the birth of Child, Mother tested positive for amphetamine and marijuana, and Child tested positive for methamphetamine and amphetamine following his delivery. Mother admitted to using methamphetamine, marijuana, and unprescribed Adderall while pregnant with Child. Child was initially placed in-home with Mother and Child's great aunt.

---

[1] Father's parental rights in Child were also terminated; however, he does not appeal the termination.

On June 7, 2016, DCS filed a petition requesting that the juvenile court find Child to be a CHINS. On August 29, 2016, and August 31, 2016, Mother tested positive for methamphetamine and amphetamine, and Child was removed on an emergency basis from Mother's care and placed in his great aunt's care. On September 22, 2016, the juvenile court found Child to be a CHINS and ordered Mother to refrain from using controlled substances, complete random drug screens, secure a legal source of income, maintain stable housing, and participate in supervised visitations.

[3] Following the CHINS adjudication, Mother's drug use continued. She tested positive for fentanyl in October of 2017 and for methamphetamine and amphetamine in February of 2018, while avoiding DCS's other attempts to conduct drug screens, stating, "I wasn't gonna go in the DCS office and take a drug screen knowing that I'm gonna fail." Tr. Vol. II p. 182. In March of 2017, DCS conducted a family team meeting to discuss the possibility of overnight visitation, but it was of no avail after Mother refused to participate in required drug screening. In January of 2018, Mother was charged with unlawful possession of a syringe, and when Family Case Manager Melissa Barret ("FCM Barret") suggested Mother participate in an inpatient detoxification program, Mother responded irately that she did not have an addiction problem. Mother acknowledged at the May 2018 termination hearing, however, that she had been "using drugs for the majority of [her] life" and that her addiction had become "full-blown" and "un-manageable." Tr. Vol. II p. 134. Mother regularly missed visits with Child, at one point missing six of twelve visits.

Mother last saw Child in October of 2017, and he has no memory of her. On December 28, 2017, DCS petitioned for the termination of Mother's parental rights and an evidentiary hearing was held by the juvenile court on May 17, 2018.

[4] During the evidentiary hearing, Mother testified that she had been participating in a residential drug-treatment program in California since March of 2018. She acknowledged that she had only been employed a few months since resigning from her job in 2016 and did not make enough money to support herself or Child. Mother also testified that she was uncertain as to where she would live or work once she returned to Indiana following her completion of drug treatment.

[5] FCM Barrett testified that termination of Mother's parental rights was in the Child's best interests. Guardian *ad Litem* Rebecca Trent ("GAL Trent") also testified that termination of Mother's parental rights was in Child's best interests. GAL Trent opined that

> based on the way [Mother] testified today, I'm not seeing enough internalization or recognition of her faults or growth in her um, that makes me think that there's going to be a major change in progress going forward [a]t any time that would be relevant for [Child's] ability to be back with her.

Tr. Vol. II p. 190. On July 20, 2018, the juvenile court ordered that Mother's parental rights be terminated. In doing so, the juvenile court concluded that the condition that resulted in Child's removal would not be remedied.

# Discussion and Decision

[6] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The parent–child relationship is "one of the most valued relationships in our culture." *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 286 (Ind. 2003) (internal citations omitted). Parental rights, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities their rights may be terminated. *Id.*

[7] In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied*. We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings, and second, whether the factual findings support the judgment. *Id.* The juvenile court's findings and judgment will only be set aside if found to be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the

juvenile court's conclusions or the conclusions do not support the judgment."

*Id.*

[8] Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> […]
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interest of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[9] It is not disputed that Child had been removed from Mother and placed with his great aunt for at least six months under a dispositional decree, termination was in the best interests of Child, and that there was a satisfactory plan for the care and treatment of Child, all required findings pursuant to Indiana Code section 31-35-2-4(b)(2). However, Mother contends that the juvenile court erred by concluding that the condition that resulted in the removal of Child from her care would not be remedied.

[10]
> In determining whether the conditions that resulted in the child[ren]'s removal…will not be remedied, we engage in a two-step analysis[.] First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions—balancing a parent's recent improvements against habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642–43 (Ind. 2014) (internal citations, quotations, and footnote omitted, first and third set of brackets in original, second set added).

[11]     Mother challenges the sufficiency of the evidence to prove that the reason for Child's removal from her care will not be remedied. The condition that led to Child's removal was Mother's substance abuse. DCS produced ample evidence to establish a reasonable probability that this condition would not be remedied. Mother tested positive for fentanyl in October of 2017 and for methamphetamine and amphetamine in February of 2018. She admitted to avoiding other drug screening because she wasn't going to take drug screens that she knew she was going to fail. Moreover, in March of 2017, when approached about the possibility of having overnight visitation with Child, Mother effectively declined the opportunity by refusing to submit to required drug screening, presumably, because she knew that she would test positive for controlled substances. Eventually, Mother's substance abuse placed her into the criminal justice system after she was charged with unlawful possession of a syringe. In January of 2018, when FCM Barret suggested to Mother that she go through a detoxification treatment to overcome her substance abuse issues, Mother angrily denied her addiction.

[12]     In sum, we agree with Mother that her substance abuse had become "full-blown." Mother points to her testimony that she had been participating in residential drug treatment for nearly two months prior to the termination hearing and that she planned to remain sober upon completion of said program. The juvenile court, however, was under no obligation to credit Mother's testimony and apparently did not. Moreover, the juvenile court was entitled to conclude that Mother would not maintain sobriety long-term. Mother has been

addicted to controlled substances a majority of her life, and her substance abuse has become unmanageable. Therefore, the juvenile court did not abuse its discretion by concluding that Mother's substance abuse which led to Child's removal would not be remedied.[2]

[13] The judgment of the juvenile court is affirmed.

Bailey, J., and Brown, J., concur.

---

[2] Mother also claims that DCS failed to prove by clear and convincing evidence that she posed a threat to Child's well-being. *See* Appellant's Br. p. 6. However, because we find Ind. Code § 31-35-2-4(b)(2)(B)(i) dispositive in this matter, we need not address her claim.