## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 29 2019, 7:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Roberta L. Renbarger
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE
MOTHER

Donald J. Frew
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE
FATHER

Nicholas A. Adams
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent–Child Relationship of A.M. and A.N.M. (Minor Children),

Roberta L. Renbarger (Guardian Ad Litem),

*Appellant-Petitioner,*

v.

A.Y.M. (Mother), and

August 29, 2019

Court of Appeals Case No. 19A-JT-605

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

Trial Court Cause Nos.
02D08-1802-JT-35
02D08-1802-JT-36

A.M.M. (Father),

*Appellees-Respondents.*

**Bradford, Judge.**

# Case Summary

A.Y.M. ("Mother") and A.M.M. ("Father) are the biological parents of A.M. (born September 3, 2014) and A.N.M. (born September 18, 2015), (collectively "the Children"). In March of 2015, A.M. was adjudicated to be a child in need of services ("CHINS"). In August of 2016, A.N.M. was adjudicated to be a CHINS. In February of 2018, the Department of Child Services ("DCS") petitioned for the termination of Mother's and Father's parental rights to the Children. On February 13, 2019, the juvenile court denied DCS's petition. Guardian *ad Litem* Roberta Renbarger ("GAL Renbarger") contends that the juvenile court's denial of DCS's termination petition was clearly erroneous. Because we disagree, we affirm.

# Facts and Procedural History

Mother and Father (collectively "Parents") are the biological parents of the Children. On March 3, 2015, the juvenile court adjudicated A.M. to be a CHINS, and on August 1, 2016, it adjudicated A.N.M. to be a CHINS. The Children were eventually placed into foster care. The juvenile court ordered

Parents to complete services outlined in a parent participation plan ("PPP"). Mother's PPP required her to, *inter alia*, maintain safe and appropriate housing, cooperate with DCS, submit to a diagnostic assessment, enroll in individual and family counseling, enroll in home-based services, complete parenting instruction, take any prescribed medication, and visit with Children. Father's PPP required him to, *inter alia*, abide by the terms of his probation, maintain safe and appropriate housing, cooperate with DCS, submit to a diagnostic assessment, enroll in individual and family counseling, enroll in home-based services, complete parenting instruction, complete a psychological and psychiatric evaluation, and visit with Children.

[3] Over the next several years, Parents failed to complete certain services and, as a result, the juvenile court modified the permanency plans from reunification to termination of parental rights. On February 27, 2018, DCS petitioned for the termination of both Father's and Mother's parental rights to the Children. On August 7, August 22, August 28, September 17, and November 14, 2018, the juvenile court held a factfinding hearing regarding the termination petition. The juvenile court found the following:

> 20. Daniel Born of the Bowen Center testified that [Father] completed a psychological evaluation, which by the Center's protocol was a parenting assessment. He was deemed to be at a parenting Risk Level I. He was referred to home based services and dialectical behavioral therapy (DBT). [Father] did not complete his home based services at the Bowen Center. He did attend some individual therapeutic sessions, however. Although [Father] was characterized as being noncompliant, he was successfully discharged in May, 2016. From the testimony of his

Bowen Center therapist, Marla Vandergrift, [Father] completed his individual therapy. She does not believe him to have any mental health issues.

21. The parents participated in home based services with Tracy Pierce of SCAN, Inc. From her testimony the Court finds that [Father] completed his parenting instruction. He has secured employment and housing.

22. [Father] lives in South Whitely, Indiana with his girlfriend and their children, a three year old and a six month old.

23. He did not visit the children in this case between August, 2017 and November 12, 2018. Weekly visits have since been scheduled.

24. [Mother] completed the first phase of a psychological evaluation with Dr. David Lombard. He concluded that her responses were overly defensive and, without further testing, could not conclude a final diagnosis. [Mother] did not return for the second evaluation. He therefore provisionally diagnosed [Mother] as suffering from major depression disorder, Attention Deficit Disorder, and as a victim of domestic violence and sexual assault. He also noted in his report a rule out diagnosis for personality disorder and bipolar disorder (State's Exhibit 5).

25. According to the testimony of Wendy Gaseiger, a skills coach with the Bowen Center, the Court finds that [Mother] has not shown progress in her visits from that which was observed in September 2017. [Mother], on occasion, concludes the visits before the scheduled time. She struggles to divide her attention between the children and does not follow through with discipline.

26. In October 2017, [Mother] was referred for home based services at SCAN, Inc. From the testimony of Shelby Knepper-Seidel, a former home based case worker with SCAN, the Court finds that [Mother] participated in a parenting education program and was making progress toward her goals. [Mother] worked in multiple jobs to supplement her income. The case worker testified that she was told that she was "too much of a cheerleader" for the mother and was directed to re-write her case notes. Nicole Houston, a subsequent home based case manager, testified that [Mother] was not making progress and her services had been on hold since June 2018.

27. From the testimony of Jason Cook, a clinical psychologist with Park Center, Inc. the Court finds that [Mother] enrolled in and attended dialectical behavioral therapy. She was consistent in her attendance. She was interactive and appropriate in her interactions in the group segment of the treatment. [Mother] completed all of the treatment cycles except the integration of skills portion. Respondent's Exhibit (AA) reflects a report to [DCS] that [Mother] completed the "DBT skills training group". To his knowledge she did not complete the advance therapy section he recommended. He noted that [Mother] received some benefit from the services but did not believe she had integrated the skills she learned.

28. [Mother] has secured housing with her mother. Her mother is quadriplegic. [Mother] provides for her daily care.

29. [Mother] is employed.

Appellant's App. Vol. II pp. 53–54. GAL Renbarger testified that she believed it was in the Children's best interests that Mother's and Father's parental rights be terminated. On February 13, 2019, the juvenile court denied the petition to terminate Mother's and Father's parental rights, concluding that DCS failed to

prove by clear and convincing evidence that there was a reasonable probability that the conditions that resulted in the Children's removal or the reasons for placement outside of Parents' home would not be remedied.

# Discussion and Decision

[4] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The parent–child relationship is "one of the most valued relationships in our culture." *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 286 (Ind. 2003) (internal citations omitted). Parental rights, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities their rights may be terminated. *Id.*

[5] In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied*. We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings, and second, whether the factual findings support the judgment.

*Id.* The juvenile court's findings and judgment will only be set aside if found to be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the judgment." *Id.*

[6] Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

Ind. Code § 31-35-2-4(b)(2). In challenging the juvenile court's denial of the termination petition, GAL Renbarger contends that the juvenile court erroneously concluded that DCS failed to establish that there was a reasonable

probability that the conditions that resulted in the Children's removal or the reasons for placement outside of Parents' home will not be remedied.[1]

[7]    In determining whether the conditions that resulted in the child[ren]'s removal … will not be remedied, we engage in a two-step analysis[.] First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions—balancing a parent's recent improvements against habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642–43 (Ind. 2014) (internal citations, quotations, and footnote omitted, first and third set of brackets in original, second set added).

[8]    Here, the conditions that led to the Children's removal were allegations of abuse and/or neglect. GAL Renbarger contends, specifically, that Parents' partial completion of some ordered services and failure to visit the Children for extended periods of time demonstrates that the juvenile court erred in

---

[1] GAL Renbarger does not challenge the juvenile court's conclusion that DCS failed to establish that there is a reasonable probability that the continuation of the parent–child relationship poses a threat to the well-being of the Children.

concluding that there was not sufficient evidence to establish that the conditions that led to the Children's removal would not be remedied. GAL Renbarger's contention is merely an invitation to reweigh the evidence and judge witness credibility, which we will not do. *See Doe*, 669 N.E.2d at 194. Moreover, it is not as though the juvenile court's determination is unsupported by evidence in the record. While the juvenile court found that Parents had not completed all of the ordered services, it did find that Parents completed or made progress towards completing services. It also found that Parents were employed, maintained housing, and that Father had resumed scheduled visitation with the Children. That said, we conclude that GAL Renbarger has failed to establish that the juvenile court's denial of DCS's termination petition was clearly erroneous.

[9] The judgment of the juvenile court is affirmed.

Vaidik, C.J., and Riley, J., concur.