## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2019, 6:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT B.M.

John R. Worman
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin M. L. Jones
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent–Child Relationship of J.M. (Minor Child)

and

B.M. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

November 20, 2019

Court of Appeals Case No.
19A-JT-1531

Appeal from the Vanderburgh Superior Court

The Honorable Brett J. Niemeier, Judge

Trial Court Cause No.
82D04-1812-JT-2236

**Bradford, Judge.**

# Case Summary

[1]     B.M. ("Mother") is the biological parent of J.M. ("Child"), (born December 16, 2012). In February of 2018, Child was adjudicated to be a child in need of services ("CHINS") due to Mother's homelessness and substance abuse. In December of 2018, the Department of Child Services ("DCS") petitioned for the termination of Mother's parental rights. On June 26, 2019, the juvenile court ordered that Mother's parental rights to Child be terminated. Mother contends that the juvenile court's termination of her parental rights was clearly erroneous. We affirm.

# Facts and Procedural History

[2]     On February 12, 2018, DCS removed Child from Mother's care due to concerns over homelessness and substance abuse and petitioned for Child to be adjudicated a CHINS. On February 21, 2018, Child was adjudicated to be a CHINS. On March 21, 2018, the juvenile court held a dispositional hearing on the CHINS petition and ordered Mother to, *inter alia*, maintain contact with

DCS, obey the law, remain drug- and alcohol-free, submit to random drug screens, obtain mental-health and substance-abuse evaluations and follow all recommendations, cooperate with parent aid services, attended visitation, maintain suitable and stable housing, and secure a legal and stable source of income.

[3] In May of 2018, Mother disclosed to family case manager ("FCM") Jodi Straus that she had used THC. From May of 2018 to October of 2018, Mother attended visitation with Child; however, visitation was thereafter stopped due to Mother's noncompliance. On July 9, 2018, Mother was charged with driving without a valid driver's license and possession of a synthetic drug, to which she pled guilty. On October 19, 2018, Mother was charged with Class A misdemeanor theft, to which she pled guilty. On December 11, 2018, DCS petitioned for the termination of Mother's parental rights. The juvenile court held evidentiary hearings on January 23, and April 11, 2019. On January 26, 2019, Mother was charged with possession of a synthetic drug, criminal trespass, and possession of paraphernalia, which were still pending at the time of the second evidentiary hearing.

[4] At the evidentiary hearing, FCM Straus testified that she believed it was in Child's best interests that Mother's rights be terminated and Child be adopted. FCM Straus noted Mother's continued substance abuse, including her admission to using THC in May of 2018, and that Mother had only submitted to ten to fifteen drug screens even though they were required twice weekly. FCM Straus also testified that she referred Mother four different times for a

dual assessment for mental health and substance abuse, but Mother only went as of March of 2019. FCM Straus testified that Mother had lived at approximately five different locations throughout this matter.

[5] Court-appointed special advocate ("CASA") Debroah Gamache testified that she believed it was in Child's best interests that Mother's parental rights be terminated. CASA Gamache noted that "Mother hasn't done the services that were offered to her until just recently. So even though she requested in court and was Court ordered […] to do a mental health [evaluation], it took her just about a year to actually go[.]" Tr. p. 76.

[6] At a hearing, Mother admitted to using synthetic drugs during this matter. She also admitted that the reason she had avoided a drug evaluation was because she had smoked marijuana in August of 2018 and did not want to screen positive. Moreover, Mother admitted that she had dealt with a "little bout of homelessness this past year," tr. p. 54, but was currently living with her boyfriend in a recreational vehicle ("RV") but showering and eating at his parents' home. Mother also admitted that she did not have a steady job or source of income, and since January of 2019, she had only earned a "couple hundred bucks," tr. p. 61, mowing lawns, a job which she classified as not "a tax paying job." Tr. p. 56. On June 26, 2019, the juvenile court terminated Mother's parental rights.

# Discussion and Decision

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The parent–child relationship is "one of the most valued relationships in our culture." *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 286 (Ind. 2003) (internal citations omitted). Parental rights, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities their rights may be terminated. *Id.*

In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied*. We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings and second, whether the factual findings support the judgment. *Id.* The juvenile court's findings and judgment will only be set aside if found to be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the

juvenile court's conclusions or the conclusions do not support the judgment."
*Id.*

[9] Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services[.]
>
>> [and]
>
> (C) that termination is in the best interests of the child[.]

Ind. Code § 31-35-2-4(b)(2).[1] In challenging the sufficiency of the evidence to sustain the termination of her parental rights, Mother contends that the trial court erred by concluding that (1) the conditions that resulted in the removal of Child from Mother's care would not be remedied, (2) the continuation of the

---

[1] It is not disputed that the Child had been removed from Mother for at least six months under a dispositional decree and that there was a satisfactory plan for the care and treatment of the Child, both required findings pursuant to Indiana Code section 31-35-2-4(b)(2).

parent–child relationship between Child and Mother posed a threat to Child's well-being, or (3) termination of Mother's parental rights was in Child's best interests.

# I. Indiana Code Section 31-35-2-4(b)(2)(B)

[10] Mother contends that there is insufficient evidence to establish a reasonable probability that the conditions that resulted in Child's removal would not be remedied or that the continued parent–child relationship posed a threat to Child. Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS was only required to establish one of the circumstances. We choose to first address Mother's contention that the trial court erred by concluding that the conditions which resulted in Child's removal would not be remedied.

> In determining whether the conditions that resulted in the child[ren]'s removal…will not be remedied, we engage in a two-step analysis[.] First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions—balancing a parent's recent improvements against habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions

> does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642–43 (Ind. 2014) (internal citations, quotations, and footnote omitted, first and third set of brackets in original, second set added).

[11] The conditions that led to Child's removal were homelessness and substance abuse. We conclude that DCS has produced ample evidence to establish a reasonable probability that these conditions will not be remedied. Regarding homelessness, Mother admitted to periods of homelessness while this matter was ongoing. Mother has lived in approximately five different locations in less than one-and-one-half years. Further, at the time of the termination hearing, Mother was living in a RV with her boyfriend, who has a criminal history associated with drugs, but showers and eats at her boyfriend's parents' residence. Regarding substance abuse, Mother has admitted to using synthetic drugs. In May of 2018, she admitted to FCM Straus that she had used THC, and in August of 2018, she admitted to smoking marijuana, causing her to choose to forgo a substance-abuse evaluation. While the ten to fifteen drug screens Mother submitted to had negative results, she was ordered to submit to drug screens twice a week. Mother's noncompliance paired with FCM Straus's testimony that "[d]ue to the different compound and chemicals they use in K2[2]

---

[2] "In 2011, the General Assembly outlawed the possession and dealing of synthetic cannabinoids, substances which are generally referred to as K2 or Spice." *L.J.K. v. State*, 987 N.E.2d 164, 166–67 (Ind. Ct. App. 2013) (citations omitted).

it's very hard to screen for it. It's very hard to catch. Not to mention, it doesn't stay in the system very long," tr. p. 23, diminishes Mother's few negative screens. Moreover, Mother has been arrested three times, twice on charges relating to substance abuse. The juvenile court did not clearly err in concluding that the conditions that led to Child's removal would not be remedied.

## II. Indiana Code Section 31-35-2-4(b)(2)(C)

[12] Mother contends that there is insufficient evidence to support the juvenile court's conclusion that termination of her parental rights was in the Child's best interests. We are mindful that, in determining what is in the best interests of a child, the juvenile court must look beyond factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until a child is irreversibly harmed before terminating the parent–child relationship because it must subordinate the interests of the parents to those of the children. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). We have previously held that recommendations from the FCM and CASA to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, is sufficient evidence to show that termination is in the child's best interests. *In re J.S.*, 906 N.E.2d at 236.

[13] FCM Straus testified that she believed it was in Child's best interests that Mother's rights be terminated and that Child be adopted. CASA Gamache also testified that termination of Mother's parental rights was in Child's best interests. While coupling that testimony with our previous conclusion that there

was sufficient evidence to show that the conditions of removal would not be remedied is sufficient to support the juvenile court's termination of Mother's parental rights, it is not as though this testimony is unsupported by other evidence in the record.

[14] In addition to Mother's inability to maintain stable housing or sobriety, Mother does not have the ability to provide the necessary care for Child. When DCS became involved in this case Child was developmentally delayed and diagnosed with PTSD. FCM Straus testified that due to Child's PTSD, "It is very important that [he has] a routine, that [he] is able to rely on people, and he's able to feel safe and secure." Tr. p. 35. Since DCS involvement, Child is attending kindergarten and testing at age-appropriate levels. Child works with multiple therapists, including a skills-development coach, outpatient therapist, and may need to start working with an occupational therapist to improve motor skills. In the words of FCM Straus, "He is thriving." *Id*. Mother, however, does not have a valid driver's license or a legal source of income. Mother has failed to demonstrate that Child could rely on her for safety and security. In fact, in the prior CHINS case, DCS had enrolled Child in Head Start, but once Child was placed back with Mother, DCS found that Child was no longer enrolled. Considering the totality of the evidence, Mother has failed to establish that the juvenile court's determination that termination was in the Child's best interest was clearly erroneous.

[15] The judgment of the juvenile court is affirmed.

Vaidik, C.J., and Riley, J., concur.