## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 13 2019, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT B.M.

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent–Child Relationship of B.M. (Minor Child)

and

A.M. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 13, 2019

Court of Appeals Case No.
19A-JT-1677

Appeal from the Vermillion Circuit Court

The Honorable Jill Wesch, Judge

Trial Court Cause No.
83C01-1810-JT-4

**Bradford, Judge.**

# Case Summary

[1]  A.M. ("Mother") is the biological parent of B.M. ("Child"), (born October 8, 2006). In May of 2016, Child was adjudicated to be a child in need of services ("CHINS") due to Mother's drug and alcohol abuse. In October of 2018, the Department of Child Services ("DCS") petitioned for the termination of Mother's parental rights. On June 21, 2019, the juvenile court ordered that Mother's parental rights to Child be terminated. Mother contends that the juvenile court's termination of her parental rights was clearly erroneous. We affirm.[1]

# Facts and Procedural History

[2]  On March 28, 2016, DCS learned of allegations of domestic violence, drinking, and methamphetamine use by Mother and her boyfriend T.C. On March 30, 2016, Family Case Manager ("FCM") Robin Gossett Fisher went to Mother's home to discuss the allegations. Mother denied any drug use but admitted to

---

[1] The juvenile court also terminated Father's parental rights, but he does not participate in this appeal.

drinking a twelve pack of beer on the weekends when Child was not home. FCM Fisher administered a drug screen, and Mother tested positive for methamphetamine and amphetamine. FCM Fisher later administered a second drug screen on Mother, and she tested positive for methamphetamine, amphetamine, Klonopin[2], and Morphine. On May 12, 2016, DCS petitioned for Child to be adjudicated a CHINS. On May 24, 2016, Child was adjudicated to be a CHINS. On July 20, 2016, the juvenile court held a dispositional hearing on the CHINS petition and ordered Mother to, *inter alia*, maintain contact and keep all appointments with DCS, enroll in all programs recommended by the FCM, maintain suitable and safe housing, secure a legal and stable source of income, abstain from consuming any illegal controlled substances or alcohol, obey the law, complete a substance abuse assessment and follow all recommendations, complete intensive family-preservation program, engage in home-based counseling, and submit to random drug and alcohol screens.

[3]     Mother was compliant with services until December 27, 2016, when she was arrested for domestic battery after beating T.C. with a broom while the two were drinking, which resulted in Child's removal from the home. Mother was released from jail at the end of January and began living at CODA, which is a facility for domestic violence victims. In February of 2017, while Mother was still living at CODA, Child was placed with Mother on a trial home visit. In

---

[2] Mother had a valid prescription for Klonopin.

March of 2017, Mother was taken into custody after failing to appear for a court hearing. Prior to turning herself in, however, Mother overdosed on Klonopin and had to be taken to the hospital. Mother remained incarcerated for several weeks and the trial home visit was terminated. On June 19, 2017, Mother pled guilty to Level 6 felony domestic battery. Upon her release, Mother was compliant with services and unsupervised visitation was implemented.

[4] In August of 2017, Mother became noncompliant with services, canceling appointments with home-based therapy and home-based casework such that both were closed out, and her compliance with drug screening was "[o]ff and on." Tr. Vol. II p. 74. On November 1, 2017, Child was again removed from Mother's care after Mother left Child at T.C.'s home for a couple of days while she went out drinking. Although T.C. was living in the home at the time, T.C. worked from 4:00 a.m. until 3:00 p.m., which left Child unsupervised for extended periods of time. After Child's removal, Mother failed to comply with services for the remainder of 2017.

[5] On January 6, 2018, Mother voluntarily admitted herself into Club Soda, which is a rehabilitation center for drug and alcohol addiction. Mother, however, was discharged from Club Soda after an altercation with another resident. The other resident began yelling at Child because the resident did not want to play a game with Child, which resulted in Mother calling the resident a "f*****g f****t" and a "[n]****r." Tr. Vol. II p. 84. In February of 2018, DCS referred Mother to the Hamilton Center for a drug and alcohol assessment, which was administered by Dominique Jackson. Jackson recommended Mother participate in Matrix

Group and motivational interviewing, neither of which Mother successfully completed. In August of 2018, visitation was ceased at the recommendation of Child's therapist. The Child's therapist advocated for visitation to stop because "Mother is a negative, traumatic influence on Child." Appellant's App. Vol. II p. 99. During supervised visitation, Mother was telling Child to "act out in the foster home, to try to hurt them, to make it difficult so that way she would get them home faster." Tr. Vol. II p. 78. Thereafter, Mother completely stopped engaging in services.

[6] On October 15, 2018, DCS petitioned for the termination of Mother's parental rights. The juvenile court held evidentiary hearings on February 7 and 8, 2019. At a hearing, FCM Fisher testified that it was in Child's best interests that Mother's parental rights be terminated and Child be adopted. FCM Fisher also testified that Mother had taken 201 drugs screens over the duration of this matter and failed to appear for forty. Mother had tested positive twenty-one times for various substances including alcohol, methamphetamine, amphetamine, THC, and morphine, with the most recent being on November 13, 2018. Moreover, FCM Fisher noted that in October of 2018, Mother had left FCM Fisher a voicemail regarding birthday presents for Child, and when FCM Fisher had returned Mother's call, Mother had stated that "she hopes [FCM Fisher] and [FCM Fisher's husband] die a slow, miserable death and called [FCM Fisher] a fat, f*****g c**t." Tr. Vol. II p. 80. Guardian *Ad Litem* ("GAL") Angela Bullock also informed the juvenile court that she believed it

was in Child's best interests that Mother's parental rights be terminated. On June 21, 2019, the juvenile court terminated Mother's parental rights.

# Discussion and Decision

[7] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The parent–child relationship is "one of the most valued relationships in our culture." *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 286 (Ind. 2003) (internal citations omitted). Parental rights, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate the parent–child relationship. *Bester*, 839 N.E.2d at 147. Therefore, when parents are unwilling or unable to fulfill their parental responsibilities their rights may be terminated. *Id.*

[8] In reviewing the termination of parental rights on appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Doe v. Daviess Cty. Div. of Children & Family Servs.*, 669 N.E.2d 192, 194 (Ind. Ct. App. 1996), *trans. denied*. We consider only the evidence and reasonable inferences therefrom which are most favorable to the juvenile court's judgment. *Id.* Where, as here, a juvenile court has entered findings of facts and conclusions of law, our standard of review is two-tiered. *Id.* First, we determine whether the evidence supports the factual findings and second, whether the factual findings support the judgment. *Id.* The juvenile court's findings and judgment will only be set aside if found to

be clearly erroneous. *Id.* A finding is clearly erroneous if no facts or inferences drawn therefrom support it. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005). "A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the judgment." *Id.*

[9] Indiana Code section 31-35-2-4(b) dictates what DCS is required to establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> [and]
>
> (C) that termination is in the best interests of the child[.]

Ind. Code § 31-35-2-4(b)(2).[3] In challenging the sufficiency of the evidence to sustain the termination of her parental rights, Mother contends that the juvenile

---

[3] It is not disputed that the Child had been removed from Mother for at least six months under a dispositional decree and that there was a satisfactory plan for the care and treatment of the Child, both required findings pursuant to Indiana Code section 31-35-2-4(b)(2).

court erred by concluding that (1) the conditions that resulted in the removal of Child from Mother's care would not be remedied, (2) the continuation of the parent–child relationship between Child and Mother posed a threat to Child's well-being, or (3) termination of Mother's parental rights was in Child's best interests.[4]

# I. Indiana Code Section 31-35-2-4(b)(2)(B)

[10] Mother contends that there is insufficient evidence to establish a reasonable probability that the conditions that resulted in Child's removal would not be remedied or that the continued parent–child relationship posed a threat to Child. Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS was only required to establish one of the circumstances. We choose to first address Mother's contention that the trial court erred by concluding that the conditions which resulted in Child's removal would not be remedied.

> In determining whether the conditions that resulted in the child[ren]'s removal…will not be remedied, we engage in a two-step analysis[.] First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. In the

---

[4] Mother challenges the juvenile court's finding that "An additional report, filed March 29, 2016, alleged that the Child was a victim of neglect due to domestic violence in the family's home." Appellant's App. Vol. II p. 86. While DCS was unable to find an additional report filed on said date, FCM Fisher did testify that the initial report that she received on March 28, 2019, alleged "domestic violence, drinking, and methamphetamine use." Tr. Vol. II p. 60. Nonetheless, because there is sufficient evidence outside of this erroneous finding to support the juvenile court's conclusion, it is harmless and in no way prejudiced Mother.

second step, the trial court must judge a parent's fitness as of the time of the termination proceeding, taking into consideration evidence of changed conditions—balancing a parent's recent improvements against habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation. We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642–43 (Ind. 2014) (internal citations, quotations, and footnote omitted, first and third set of brackets in original, second set added).

[11] The conditions that led to Child's removal were alcohol and drug abuse. We conclude that DCS has produced ample evidence to establish a reasonable probability that these conditions will not be remedied. Throughout this entire matter, Mother has failed to maintain sobriety. Mother failed to appear for forty drugs screens and tested positive on twenty-one. She tested positive for alcohol, methamphetamine, amphetamine, THC, and morphine, with the most recent being a November 13, 2018, drug screen which returned positive results for methamphetamine, amphetamine, and THC. Moreover, Mother's substance abuse led to her conviction for Level 6 felony domestic battery, after she beat her then-boyfriend T.C. with a broom while the two had been drinking. Mother's substance abuse also caused Child to be left unsupervised at T.C.'s home for a couple of days while she went out drinking with friends. Mother has consistently chosen alcohol and drugs over the welfare of Child. The juvenile

court did not clearly err in concluding that the conditions that led to Child's removal would not be remedied.

## II. Indiana Code Section 31-35-2-4(b)(2)(C)

Mother contends that there is insufficient evidence to support the juvenile court's conclusion that termination of her parental rights was in the Child's best interests. We are mindful that, in determining what is in the best interests of a child, the juvenile court must look beyond factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court need not wait until a child is irreversibly harmed before terminating the parent–child relationship because it must subordinate the interests of the parents to those of the children. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). We have previously held that recommendations from the FCM and court-appointed special advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, is sufficient evidence to show that termination is in the child's best interests. *In re J.S.*, 906 N.E.2d at 236.

FCM Fisher testified that it was in Child's best interests that Mother's rights be terminated and that Child be adopted. GAL Bullock also believed that termination of Mother's parental rights was in Child's best interests. While coupling that testimony with our previous conclusion that there was sufficient evidence to show that the conditions of removal would not be remedied is

sufficient to support the juvenile court's termination of Mother's parental rights, it is not as though this testimony is unsupported by other evidence in the record.

[14] In addition to Mother's substance abuse issues, Mother's influence on Child seems to be detrimental to his well-being. While in the presence of Child at Club Soda, Mother used racial and homophobic slurs as she yelled at another resident. Mother also told Child to act out in his foster home and hurt his foster parent. Moreover, Mother failed to successfully complete services recommended by DCS and had her visitation with Child terminated after Child's therapist said it was detrimental to his well-being. Considering the totality of the evidence, Mother has failed to establish that the juvenile court's determination that termination was in the Child's best interest was clearly erroneous.

[15] The judgment of the juvenile court is affirmed.

Robb, J., and Altice, J., concur.